BUFFALO FARM EXCHANGE, INC., and Another, Respondents, *v.* EDITH HEINZ and Others, Defendants, Impleaded with FRED L. SWEET, Appellant.

Fourth Department, May 4, 1932.

*Julius J. Goldstein*, for the appellant.

*Elton M. Dale*, for the respondents.

CROSBY, J.   This action is one to foreclose a mortgage on real estate.   The defendant Edith Heinz was the maker of the mortgage. The mortgage was for $1,235.51, and given to the two plaintiffs, not jointly, but severally, in the following proportion, $350 to Buffalo Farm Exchange, Inc., and $885.51 to Meyers Lumber Company, Inc., with a provision that there was no priority of interest as between the two plaintiffs.

The complaint was the usual one in foreclosure actions.   The facts upon which defendant, appellant, Sweet relies for his separate answer and counterclaim are substantially as follows:

On October 1, 1930, plaintiff Buffalo Farm Exchange, Inc., sold the land here involved to defendant Edith Heinz on a land contract for $350.   On May 1, 1931, a deed was given which was recorded May 4, 1931.   The owner, Edith Heinz, began the erection of a house on the land before she got her deed, and contracted for labor and materials with (among others) the plaintiff Meyers Lumber Company, Inc., to the extent of $885.51, and with the assignor of defendant Fred L. Sweet to the extent of $1,000.   Of the labor and materials furnished by Sweet's assignor, the first item was furnished on October 8, 1930, and the last on June 1, 1931.   It does not appear when the plaintiff Meyers Lumber Company, Inc., furnished the materials which made up its claim of $885.51, but presumably it was all furnished before May 2, 1931, for that is the date of the mortgage.   The mortgage, by its terms, all became due in one month from date, or on June 2, 1931.

In other words, plaintiff Meyers Lumber Company furnished the owner the $885.51 worth of lumber before she got a deed of the premises, and joined with the seller of the land in taking a mortgage the day after the owner received her deed, the mortgage becoming due in one month, and foreclosure suit was commenced within less than a month and a half after the due date of the mortgage.   Defendant Sweet's assignor, whose last item of work and material was

furnished June 1, 1931, filed a lien on June 3, 1931, the day after the mortgage given to plaintiffs became due.

Sweet's answer, after alleging the substance of the foregoing facts, further alleges as follows: " That the said mortgage was placed on record in an attempt to defraud and defeat the defendant Fred L. Sweet herein of his just remedy by virtue of the Mechanics' Lien Law of the State of New York; that the said mortgage was placed on record before the four months period allowed to this defendant or his assignor expired according to law; that the operation of the said mortgage tends to defeat the remedy afforded by the Mechanics Lien Law."

On the trial plaintiffs put in evidence the mortgage and accompanying bond, proved their ownership by the plaintiffs, proved the computation of interest and rested. On cross-examination of the only witness for plaintiffs, the president of Meyers Lumber Company, Inc., defendant Sweet sought to prove that the witness had knowledge at the time of taking the mortgage of the just claims of those, including Sweet, who had furnished labor and materials in the improvement of the premises. In this attempt he was thwarted by the rulings of the court, and duly took exception.

The colloquy that occurred between the court and various counsel leaves it somewhat obscure just what counsel was trying to prove, and what he offered to prove. But it is entirely clear that the court meant to hold that, where two or more persons furnish labor and materials for the improvement of real property, and one secures a mortgage for his claim, and the other files a mechanic's lien, the mortgagor has an advantage over the mechanic's lienor that cannot be overcome by showing that the mortgagor took his mortgage with knowledge of the equities of others who have also contributed labor and materials to the improvement of the premises. This appears from the statement that " They [mechanic's lienors] have the right to protect themselves by bidding [at the mortgage foreclosure sale] and get the money out of the surplus." And again, where the court expressed a doubt that there are " any authorities that entitle lienors to come in here on an equal basis with the mortgagee." These are not correct expressions of the spirit of the Lien Law. Section 7, as amended, provides that one who has contributed to the improvement of real property cannot gain an advantage over another by securing a payment on his claim in advance of its due date. And the latter part of section 7 provides that " A   *   *   * mortgage   *   *   *   made by an owner of real property, for the purpose of avoiding the provisions of this article, with the knowledge or privity of the person to whom   *   *   *   or in whose favor the mortgage   *   *   *   is created, shall be void and of no effect

as against a claim on account of the improvement of such real property existing at the time of the * * * creation of such mcrtgage * * *."

And section 13 (1) now provides: " Persons shall have no priority on account cf the time of filing their respective notices of liens, but all liens shall be on a parity [with certain exceptions]."

Section 13 (1) has ended the mad scramble to determine who can first file his lien, and section 7 apparently is calculated to discourage efforts cf one prospective lienor to gain an advantage over others known to him to have equities like his own, by securing a real estate mortgage.

While appellant's answer may not be as explicit as one could wish, the allegation " that the said mortgage was placed on record in an attempt to defraud and defeat the defendant Fred L. Sweet herein of his just remedy by virtue of the Mechanics' Lien Law," etc., fairly entitled him to prove that the owner, with the knowledge of plaintiff Meyers Lumber Company, gave a mortgage for the purpose of avoiding and defeating the purpose of the Lien Law, which is to secure equity and fair dealing among lienors.

It would seem that the mortgage, in so far as it secures to Buffalo Farm Exchange, Inc., the purchase price of the land, would have priority over a lien for improvements made by appellant, unless, during the period before Buffalo Farm Exchange, Inc., gave its deed, and while it still owned the title, it consented to such improvements. (Lien Law, § 3; *Jones* v. *Menke*, 168 N. Y. 61.) There is, however, no pleading to cover this point, and no proof that there was such consent either express or implied. Upon the record, as it stands, the part of the mortgage given to secure the $350 purchase money is superior to the lien of appellant. However, as the case was tried, and notwithstanding the answer is somewhat vague in alleging knowledge on the part of Meyers Lumber Company, Inc., that the mortgagor purposed to avoid the provisions of the Lien Law, we think appellant should have been permitted to prove that the mortgagee Meyers Lumber Company had such knowledge as to render its mortgage void under the provisions of section 7 of the Lien Law.

The judgment should be reversed on the law and a new trial ordered, with costs to the appellant to abide the event.

All concur.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.